UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI


IN RE:  MARK ANDREWS, Debtor                                        CASE NO. 04-13543


OPINION


On consideration before the court is an objection to confirmation of the debtor's Chapter 13 plan, as well as, a motion to dismiss the above captioned bankruptcy case, both of which were filed by Ginger Andrews; a response to the objection and motion filed by the debtor, Mark Andrews; and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the subject matter of and the parties to these proceedings pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157.  These are core proceedings as defined in 28 U.S.C. §157(b)(2)(A), (L), and (O).

II.

The parties to these proceedings are not strangers to litigation in this court.  Mark Andrews, (hereinafter "debtor"), initially filed a Chapter 7 bankruptcy case, No. 01-14885, on August 20, 2001.  During the pendency of that case, Ginger Andrews, (hereinafter "movant"), filed an adversary proceeding, No. 01-1252, requesting the court to determine that certain domestic relations obligations were nondischargeable pursuant to §523(a)(6) of the Bankruptcy Code.  At the conclusion of that proceeding, the court entered a nondischargeable judgment on August 19, 2003, against the debtor in the total sum of $126,836.48, plus interest, costs, and attorney's fees. A subsequent order was entered on November 3, 2003, calculating the exact

amount of the attorney's fees and expenses in the sum of $39,932.71, thereby increasing the nondischargeable debt owed to the movant to the sum of $166, 769.19. Copies of the court's opinion and the related judgments are appended hereto and are incorporated herein by reference. The debtor received his Chapter 7 discharge on October 14, 2003, and his case was eventually closed.

On June 14, 2004, the debtor filed the above captioned Chapter 13 bankruptcy case. The only creditor in the case is the movant. The schedules reflect that she is owed a debt in the sum of $166,229.19. (There is a slight discrepancy in the current scheduled amount and the total amount of the nondischargeable judgment after the addition of the attorney's fees and expenses as set forth hereinabove.) The movant has objected to the confirmation of the debtor's Chapter 13 plan and, additionally, has moved to dismiss the bankruptcy case on the basis that it was not filed in "good faith." (Parenthetically, the court would note that the debtor did pay his attorney the sum of $600.00 as a down payment for filing the Chapter 13 case. The balance of the fee, $900.00, is to be paid through the Chapter 13 plan.)

In his Chapter 13 schedules, the debtor indicated that he is employed as a loan clerk for Money Now in Ripley, Mississippi. This business, which is apparently a check cashing/consumer loan operation, is owned by the debtor's girlfriend of several years, Bonnie Smith. On Schedule I, the debtor's monthly "take home" income was listed as $1,125.00. On Schedule J, his monthly expenditures were itemized in the sum of $932.00, leaving monthly disposable income in the sum of $193.11. The debtor, who resides with his girlfriend, reported that he owns no real estate. He listed personal property assets totaling $1,625.00, most of which were claimed as exempt.

In his Statement of Financial Affairs, the debtor indicated that he was employed by BOS Sales, Inc., a used car dealership, from January 1, 2003, through December 31, 2003. This is another business that is owned exclusively by Bonnie Smith. Although the debtor does not own a motor vehicle, he apparently utilizes one that is owned by BOS Sales. As such, Bonnie Smith has effectively been and continues to be the primary source of the debtor's income, the source of his mode of transportation, and the source of his place of residence. To his credit, as set forth on Schedule J, the debtor does pay for his gasoline, certain utilities, and food.

In addition to owning BOS Sales and Money Now, Bonnie Smith is the manager of the Massengill Apartments. She also recently entered into a container business venture with an individual who was identified as Frank Spann.

Within the last several months, Smith borrowed $60,000.00 from a trust established by the debtor's mother, Marguerite Andrews, for the benefit of the debtor so that she (Smith) could acquire an interest in the former Red Kap factory building in Ripley, Mississippi. This loan consumed the entire principal amount of the trust which had been generated when the debtor's mother sold her undivided interest in a Florida condominium. This particular condominium was an issue in the adversary proceeding litigated between the parties hereto and was discussed in the court's previous opinion. The debtor's sister is the trustee of the trust which is to be divisible at the debtor's death between Bonnie Smith and the debtor's two children. The income from the trust is supposed to be payable to the debtor during his lifetime.

Interestingly, the $60,000.00 loan to Smith is to bear interest at the rate of 10% per annum, and is to be repaid at the rate of $100.00 per month over a ten year period. According to an amortization schedule provided by the movant subsequent to the hearing, this payment rate

3

would actually yield a negative amortization, resulting in an indebtedness being owed in the sum of $140,864.17, over twice the amount of the original indebtedness, at the conclusion of the ten year "pay back" term.

The debtor testified, not surprisingly, that he has received no income from this trust.

As noted hereinabove, the debtor set forth in his bankruptcy schedules that his income was derived from Money Now. However, at the hearing, the court's notes reflect that the debtor testified that he received $250.00 every two weeks from BOS Sales. Quite frankly, the court cannot determine whether this is additional income or whether the debtor erroneously stated his source of income.

The court would be remiss in not mentioning that the debtor appears to be a very capable individual. In the past, he has owned and operated several business enterprises including a trucking company. He managed the Foley, Alabama, airport, as well as, the Corinth, Mississippi, airport. He has bought and sold numerous aircraft and is a licensed, instrument rated pilot. Currently, however, he does not appear to be maximizing his skills and talents.

### III.

The "totality of circumstances" test is the standard applicable in the Fifth Circuit for determining whether a Chapter 13 plan has been filed in good faith. See, In re Nahat, 315 B.R. 368 (Bankr. N.D. Texas 2004) (citing, In re Ramirez, 204 F.3d 595 (5th Cir. 2000)). The majority of the circuits that have addressed this issue apply the same standard. See, In re Love, 957 F.2d 1350 (7th Cir. 1992); In re LeMaire, 898 F.2d 1346 (8th Cir. 1990); Matter of Metz, 820 F.2d 1495 (9th Cir. 1987); and In re Kitchens, 702 F.2d 885 (11th Cir. 1983).

In discussing the "totality of circumstances" test, the Seventh Circuit offered the following comment in In re Love, supra, to-wit:

> Keeping in mind that the focus of the inquiry is fundamental fairness, the following nonexhaustive list exemplifies some of the factors that are relevant when determining if a Chapter 13 petition was filed in good faith: the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors...

In re Love, 957 F.2d at 1357.

The opinion of the court in In re Jahnke, 146 B.R. 830 (Bankr. E.D. Calif. 1992), also provides excellent guidance, to-wit:

> The debtor correctly cites the "totality of circumstances" test which must be applied whenever good faith in serial bankruptcy filings becomes an issue. Matter of Metz, 820 F.2d 1495, 1498 (9th Cir. 1987). See also, In re Goeb, 675 F.2d 1386, 1391 (9th Cir. 1982). Before the court can confirm a chapter 13 plan, the debtor has the burden of proving that each element in 11 U.S.C. sec. 1325 has been met. In re Chinichian, 784 F.2d 1440, 1444 (9th Cir. 1986). When a "superdischarge" is sought that burden is especially heavy. In re Warren, 89 B.R. 87, 93 (9th Cir. BAP 1988).
>
> The use of chapter 13 in order to discharge a debt which would not be dischargeable under chapter 7 is insufficient alone to prove a lack of good faith. Warren, 89 B.R. at 93-94, citing In re Gregory, 705 F.2d 1118, 1121, n. 4 (9th Cir. 1983). Rather, it is a factor to be considered with others. Id. The debtor's prebankruptcy past is not immune from consideration in applying the totality of circumstances test. Warren, 89 B.R. at 94-95.
>
> With these major bankruptcy tenets regarding good faith in mind, the court will turn to what it views as the indicia of a lack of good faith in the present case.
>
> First, the present chapter 13 case was filed less than one (1) month from the date the judgment of nondischargeability was filed. Although the debtor states in his declaration that the tax debts which he incurred for the 1991 tax year prompted the chapter 13 filing, the debtor does not state why those taxes were not paid. The court raises this question because the debtor filed his chapter 7 case in April 1990 and surely was not paying those creditors who were listed in his chapter 7 schedules. Yet, the debtor reveals in question number 1 on his statement of financial affairs that in 1991 his approximate income was

5

$42,500. If he was not paying those creditors of the taxing authorities, who was he paying? The court draws the inference that the debtor intentionally failed to pay his taxes and, instead, planned to include such taxes along with any nondischargeable debt in the future chapter 13 case which was contemplated.

In re Jahnke, 146 B.R. at 832.

The decision in Jahnke is consistent with an earlier decision of the Fifth Circuit, In re Chaffin, 836 F.2d 215 (5th Cir. 1988), as well as, a later decision rendered by the Bankruptcy Court for the Southern District of Mississippi, In re Altmann, 256 B.R. 468 (Bankr. S.D. Miss. 2000).

IV.

The following circumstances are pertinent to the decision to be rendered by this court, to-wit:

1.  The only debt in this Chapter 13 bankruptcy case is the nondischargeable judgment owed to the movant which resulted from the debtor's willful and malicious conduct as contemplated by §523(a)(6) of the Bankruptcy Code.

2.  The debtor's Chapter 13 bankruptcy case, wherein he seeks a "superdischarge," was filed within ten months of this court's decision, rendered in the debtor's previous Chapter 7 case, that the debt owed to the movant was nondischargeable. The present case was filed eight months after the debtor received his Chapter 7 discharge.

3.  The debtor elected not to appeal this court's decision which concluded that he had disposed of substantial assets and had not accounted for the proceeds thereof which would have been owing to the movant, his former spouse.

6

4. The debtor appears to have intentionally refrained from acquiring any property in his own name. He has no banking accounts, no motor vehicle, nor any real property. Rather, he has chosen to reside with his girlfriend and utilize a motor vehicle that is owned by one of her businesses.

5. His relationship with his girlfriend, Bonnie Smith, could at best be described as unusual. In the past, the debtor operated significant business enterprises. At present, the debtor is content to draw only a modest salary from either one or both businesses owned by Smith, i.e., Money Now or BOS Sales.

6. Smith has been permitted to borrow the entire principal of a trust established by the debtor's mother for his benefit. The remainder interest in this trust is designated equally to Smith and the debtor's two children. The repayment schedule for this loan results in a negative amortization so that the debt is more than doubled, rather than repaid, after its ten year term.

7. Considering the debtor's employment history and his ability to earn substantially more income, he appears to be attempting to hold his earnings at an artificially low level, at least for the present time.

Considering the totality of the circumstances enumerated hereinabove, the court concludes that this Chapter 13 case was not filed by the debtor in good faith. The movant's motion to dismiss is well taken and will be sustained by a separate order to be entered contemporaneously herewith. The objection to confirmation of the debtor's Chapter 13 plan is rendered moot.

This the 19th day of May, 2005.

<u>/s/ DAVID W. HOUSTON, III</u>
UNITED STATES BANKRUPTCY JUDGE